# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**RAY A. ROBERSON,**                    :
                                        :      **CIVIL ACTION FILE NO.**
      **Plaintiff,**              :
                                        :      **1:06-CV-0896-RWS**
      **v.**                      :
                                        :
**ALLIED AUTOMOTIVE GROUP,**            :
                                        :
      **Defendant.[1]**            :

# O R D E R

Currently before the Court is Defendant's Motion for Summary Judgment.
[Doc. 37]. For the reasons set forth herein, the motion is **GRANTED**.

## I.    INTRODUCTION

On April 14, 2006, Plaintiff, a black male, filed a three-count civil action against

Allied Automotive Group ("Allied" or "Defendant"), Van Cook, and Jack Cunningham,

alleging: (1) discriminatory discharge in violation of Title VII of the Civil Rights Act

of 1964 as amended, 42 U.S.C. § 2000e *et seq.*, ("Title VII") (Count 1); (2) retaliation

in violation of Title VII based on disciplinary actions and termination (Count 2); and

---

[1]      Plaintiff also sued Defendants Van Cook and Jack Cunningham, [Doc. 1],
but Cook and Cunningham were dismissed from the case on October 17,
2007. [Doc. 26].

(3) negligent retention under Georgia law (Count 3). On October 17, 2007, this Court dismissed Cook and Cunningham as defendants from this lawsuit, leaving Allied as the sole defendant. [*See* Doc. 26]. The case was initially referred to Magistrate Judge Alan J. Baverman. On May 27, 2008, Allied filed a motion for summary judgment. [Doc. 37]. Plaintiff filed a response on July 3, [Doc. 41], and Defendant filed a reply on July 21 [Doc. 44]. On February 4, 2009, the Court entered an order [46] withdrawing the reference to Judge Baverman. With briefing completed, the undersigned turns to the merits of Defendant's motion for summary judgment.

## II.    FACTS

The following pertinent facts of this case at the summary judgment stage are construed in the light most favorable to Plaintiff as the non-moving party.[2]

### A.    *Allied Automotive Group*

Allied is a business engaged in transporting automobiles to dealers across the United States and Canada. (D ¶ 1).[3] It operates numerous transportation terminals

---

[2]     In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004) (citing *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999)).

[3]     Those paragraphs preceded by "D" refer to paragraphs in "Defendant Allied Automotive Group, Inc.'s Statement of Material Facts As To Which There Is No

throughout the United States, including one in Commerce, Georgia. (D ¶ 2). The vehicles transported out of the Commerce terminal are only Toyota vehicles from the adjacent Toyota processing facility. (D ¶¶ 3-4). Van Cook was the terminal manager and supervisor of the drivers at the Commerce facility in 2005. (Roberson Dep. at 49).

### B.    Drivers

The driver is responsible for loading vehicles onto a car carrier, transporting the vehicles, and unloading the vehicles at customer locations. (D ¶ 6). Some Allied drivers operate privately owned trucks that are then leased to Allied. (D ¶ 7). These truck owners are known as brokers. (Roberson Dep. at 36-37). To be a broker with Allied, the driver must have a valid lease agreement with Allied. (D ¶ 8). The Commerce facility only employs brokers. (Roberson Dep. at 48).

### C.    The Collective Bargaining Agreement

The terms and conditions of a driver's employment are covered by a collective bargaining agreement between Allied and the International Brotherhood of Teamsters ("Teamsters"). (D ¶ 10).

_____

Genuine Issue To Be Tried." [Doc. 37-3].

3

### 1.    Disciplinary Provision

Article 40 of the agreement outlines the disciplinary policy for major and minor

vehicular accidents.  (D ¶ 11).  Article 40 states in relevant part that:

> The Employer shall not discharge or suspend any employees without just
> cause, but in respect to discharge or suspension shall give at least one (1)
> warning notice . . ., except that no warning notice need be given to an
> employee before he is discharged if the cause of such discharge is
> dishonesty . . . .

(Art. 40 at 208, Def't Exh. 12 in Roberson Dep.).

### 2.    Transfer Provision

Article 38 provides that if an employee is laid off due to a lack of work, he may

be reassigned to another terminal where work is available.  (D ¶ 13).  Article 38 also

provides that a manager may notify a driver of extended work when the manager

becomes aware of this work.  (D ¶ 14).  Article 38 does not apply if the available work

is for less than 30 days.  (D ¶ 15).

### 3.    Dispute Resolution Provision

If a dispute arises between Allied and a driver, the agreement provides for a

grievance procedure.  (D ¶ 16).  Once a grievance is filed, the employee, the Union

representative, and an Allied representative meet to discuss the grievance and try to

reach an informal resolution.  (D ¶ 17).  If the dispute is not resolved informally, a

panel of the Southern Area Automobile Transporters Grievance Committee ("SAATGC") adjudicates it. (D ¶ 18). The SAATGC decision is binding on the employee and the company. (D ¶ 19).

### D.    Plaintiff's Employment with Allied

Allied originally hired Plaintiff in 1998 as a company driver. (Roberson Dep. at 34). Plaintiff resigned in 1999. (*Id.*). He was rehired in 2000 as a broker. (*Id.* at 35). Plaintiff was a member of the Teamsters when he worked for Allied. (*Id.* at 102).

#### 1.    The Toyota Corolla Incident

On June 14, 2005, Plaintiff was dispatched from the Commerce terminal to deliver a load of Toyota vehicles to various stops in the Midwest, including Des Plaines, Illinois. (D ¶ 21). While on this trip, Plaintiff's truck was involved in a driving incident. (Roberson Dep. at 55). As soon as Plaintiff pulled over, he reported the incident to Allied. (Roberson Dep. at 57). Plaintiff then inspected the truck and his load. (*Id.* at 57-58). Plaintiff noticed that one of the chains holding a vehicle in place had broken, which led to a car on the trailer rolling on top of another car on the trailer. (*Id.* at 59). The roof of the bottom car was dented. (*Id.* at 61). Allied then told

Plaintiff to secure the load, take pictures, and deliver the cars to the dealership including the damaged car unless it was refused. (*Id.* at 60-61).

Plaintiff then delivered the dented car - - a Toyota Corolla - - to a Des Plaines rental car agency. (*See* D ¶ 22; Roberson Dep. at 63). Because the Corolla suffered significant roof damage,[4] the supervisor at the rental car agency refused delivery of the Corolla. (D ¶ 22; Roberson Dep. at 69-70).

Plaintiff returned the Corolla to the Toyota facility for inspection and repair. (D ¶ 23). Plaintiff then completed an accident report (Roberson Dep. at 77) stating that there was damage to the Corolla's roof (D ¶ 24). He returned the report to Cook when he next reported to work at the Commerce terminal. (*Id.* at 82).

During Toyota's inspection, Toyota discovered additional, undisclosed damage to the interior of the Corolla's roof. (D ¶ 25). Toyota and Cook, the terminal manager at the Commerce facility, found footprints and hand prints on the interior roof that corresponded to the dents in the roof's exterior. The inspectors believed that someone had tried to fix some of the exterior damage by pressing upward on the roof from the inside. (D ¶ 26). Toyota then communicated with Allied that it intended to conduct an

---

[4]    There was $1,636.70 in damage to the car. (Roberson Dep. at 101).

6

investigation regarding the damage and that it prohibited Plaintiff from transporting Toyota vehicles from the Commerce terminal pending its investigation. (D ¶¶ 27-28).

Following Toyota's investigation, Toyota concluded that Plaintiff had attempted to conceal damage to the exterior of the Corolla's roof before delivery by trying to remove dents with his hands and feet. (D ¶ 29). Based on this conclusion, Toyota informed Allied that it was permanently banning Plaintiff from hauling Toyota vehicles. (D ¶¶ 30-31).

Allied also conducted an investigation of the incident (D ¶ 32) and concluded that Plaintiff had failed to follow the procedure for securing vehicles on his truck, which led to the roof damage of the Corolla (D ¶ 33). Allied also concluded that Plaintiff: (1) failed to report immediately the damage to his supervisor; (2) tried to conceal the damage by pressing upward on the roof; (3) tried to avoid responsibility by delivering the Corolla after hours to the Des Plaines dealership; and (4) failed to disclose the interior damage after returning to Commerce. (D ¶ 34).

Allied discharged Plaintiff effective July 20, 2005, based on the investigations' results. (D ¶ 35). Plaintiff then filed a labor grievance on July 21. (D ¶ 36). As part of the grievance process, Allied contacted Toyota to try to remove the ban on Plaintiff (D ¶ 38), but Toyota refused to lift its ban (D ¶ 39). The SAATGC adjudicated

Plaintiff's dispute on August 23, 2005, ruling in Plaintiff's favor by reinstating Plaintiff and directing Allied to make its best efforts to have Toyota rescind the ban. (D ¶ 41). The SAATGC ruling noted that until Toyota's ban was lifted, Plaintiff would not have any other work opportunities at Commerce, so it directed Allied to make other work opportunities available to Plaintiff. (*Id.*).

Following the SAATGC decision, Cook and other Allied representatives requested that Toyota lift its ban, but it refused. (D ¶¶ 42-44). On November 28, 2005, Toyota sent an email to Allied reiterating that Plaintiff was banned from transporting Toyota products out of the Commerce facility and stating that it considered the matter closed. (D ¶ 46). Plaintiff is the only Allied driver in the Commerce terminal to have been permanently banned from hauling Toyota products. (D ¶ 74).

### 2. *Transfer to Walbridge, Ohio Terminal*

After Plaintiff was reinstated by the August 2005 SAATGC decision, Allied laid off everybody at the Commerce terminal. (Roberson Dep. at 120-21, 133). The drivers then completed a lay off form, which allowed them to choose transfer locations. (Roberson Dep. at 120-21, 134; Def't Exh. 25 in Roberson Dep.). The company ultimately chose where to send the driver. (Roberson Dep. at 135). Plaintiff initially chose a number of destinations for transfer, but Allied told him that he could only

8

choose one transfer location. (Roberson Dep. at 134). Plaintiff chose Walbridge, Ohio, when he resubmitted the layoff form. (*Id.*; Def't Exh. 25 in Roberson Dep.). Plaintiff then accepted reassignment to the Walbridge, Ohio, terminal effective September 5, 2005. (D ¶ 57). Plaintiff did not make the same money in Ohio that he earned at the Commerce terminal, so he filed a union grievance to return to the Commerce terminal. (Roberson Dep. at 126-27).

On September 22, 2005, Plaintiff also requested that he be returned to the Commerce terminal. (Roberson Dep. at 150). He sought this return because: (1) he was not making the same amount of money; (2) once he dropped off loads, he was not getting assignments to pick up loads on his return to Walbridge (*id.* at 151); (3) there was not enough work to keep the drivers busy; and (4) the tolls were "killing" him (*id.* at 153). Plaintiff then left Walbridge and returned to Atlanta despite understanding that the Toyota ban was still in effect. (*Id.* at 159).[5]

---

[5] After Plaintiff returned to Atlanta, Plaintiff thought that he might be transferred to California to haul Toyotas, but Cook ultimately did not offer Plaintiff such a transfer. (Roberson Dep. at 161-62). Instead, Cook offered Plaintiff a choice between the Orlando, Florida, and Meridian, Mississippi, terminals. Plaintiff chose Meridian. (Roberson Dep. at 163). After Plaintiff started hauling in the Meridian terminal, Cook informed Plaintiff that he was done working in Meridian. (*Id.* at 167). Plaintiff then signed a new lease agreement, but he was never put back to work. (*Id.* at 171-72, 184, 291).

AO 72A
(Rev.8/82)

### 3. Access to Plaintiff's Truck

Plaintiff's truck was parked behind Allied's trailer at the Commerce terminal. (Roberson Dep. at 136-37). The Allied trailer and Plaintiff's truck was on Toyota property. (*Id.* at 139). Plaintiff was told that because he was banned by Toyota, he could not come to retrieve his truck. (*Id.* at 140). When Plaintiff had his informal hearing at the Commerce terminal regarding his grievance in July 2005, he retrieved his truck and took it to the Hapeville terminal. (*Id.* at 140-41). During the month that Plaintiff did not have his truck in July 2005, he was not hauling any product. (*Id.* at 142).

### E. EEOC Charges of Discrimination

In 2003, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") complaining about racial discrimination by the prior terminal manager at the Commerce terminal. (Roberson Dep. at 190). Plaintiff did not file a lawsuit based on this previous EEOC charge. (*Id.* at 193).

On October 5, 2005, Plaintiff filed another EEOC charge. (D ¶ 51). At this time, Plaintiff was not represented by counsel. (Roberson Dep. at 180). In this charge, Plaintiff only checked the "RACE" box on the form. He left the "RETALIATION" box

10

unchecked.  The charge indicated that the discriminatory acts transpired between June

14, 2005, and October 5, 2005.  Plaintiff specifically alleged:

> I.  On or about September 15, 2000, I was hired as a Driver by [Allied].  On June 14, 2005, I was suspended pending an investigation.  On July 20, 2005, I was discharged.  On September 12, 2005, I was reinstated.  However, I have been informed that I will have to transfer to Ohio.

> II.  The reason I was given for being discharged was due to violation of Article 40 of the National Agreement (dishonesty).  The reason for the transfer is because I have been banned from the yard.

> III.  I believe that I have been discriminated against because of my race (Black) in violation of Title VII of the Civil Rights Act of 1964, as amended.

(EEOC Charge at Def't Exh. 28 in Roberson's Dep.).  Cook became aware of this

EEOC charge in December 2005.  (Cook Aff. ¶ 26 in Doc. 37).  The EEOC made a no

cause determination on January 12, 2006.  (D ¶ 52).[6]

---

[6]     Plaintiff filed another charge of discrimination with the EEOC on May 9, 2006 (D ¶ 53), complaining about discrimination and retaliation that occurred between November 10, 2005, and May 5, 2006 (*See* EEOC Charge at Def't Exh. 31 in Roberson's Dep.).  The EEOC issued a right to sue letter on May 16, 2006.  (D ¶ 54). Plaintiff's instant civil action does not encompass the claims in the May 2006 EEOC charge because his complaint was filed on April 14, 2006, approximately one month before Plaintiff filed the May EEOC charge and Plaintiff did not amend his complaint to raise claims stemming from the May 9 EEOC charge.  [*See* Dkt.].

11

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when no genuine issue as to any material fact is present, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The movant carries the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact." *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 840 (11th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991).

The nonmovant is then required "to go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007). "When opposing parties tell two

AO 72A
(Rev.8/82)

different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* If the record does not blatantly contradict the nonmovant's version of events, the court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *See Anderson*, 477 U.S. at 252; *see also EPL Inc. v. USA Federal Credit Union*, 173 F.3d 1356, 1362 (11th Cir. 1999); *Duke v. Cleland*, 884 F. Supp. 511, 514 (N.D. Ga. 1995).

## IV. DISCUSSION

### A. The Scope of Plaintiff's Civil Action

Plaintiff filed a three-count complaint raising the following claims: (1) discrimination by Cook and Jack Cunningham, which ultimately resulted in a racially discriminatory termination, in violation of Title VII [Doc. 1 ¶¶ 31-39]; (2) retaliatory "disciplinary actions" and termination, in violation of Title VII [*id.* ¶¶ 40-43]; and (3) negligent retention, in violation of Georgia law [*id.* ¶¶ 44-53]. Defendant explained that the negligent retention claim was withdrawn by stipulation of counsel. [Doc. 37 at 11 n.5].

AO 72A
(Rev.8/82)

As a result, Defendant now moves for summary judgment on Plaintiff's Title VII discriminatory discharge claim and Plaintiff's Title VII retaliation claims. [*See* Doc. 37 at 13-24]. Plaintiff does not respond to Defendant's arguments relating to his discriminatory and retaliatory discharge claims. Instead, he appears to argue that Defendant is not entitled to summary judgment because he was racially discriminated against when: (1) he was only permitted to request a transfer to the Walbridge, Ohio, terminal; (2) he was not allowed to retrieve his vehicle from Allied's property; and (3) he was constructively discharged from his transfer and his inability to retrieve his truck. [Doc. 41 at 9-11]. Plaintiff also argues that he experienced retaliation when he was only permitted to transfer to Walbridge, Ohio, and he was not allowed to retrieve his vehicle from Allied's lot. [*Id.* at 18].

Thus, Plaintiff does not oppose Defendant's motion for summary judgment on the retaliatory and discriminatory discharge claims. Instead, he raises for the first time in his response brief the following Title VII claims: (1) discriminatory constructive discharge; (2) discriminatory transfer; (3) discriminatory denial of transfers; (4) discriminatory denial of access to his truck; (5) retaliatory transfer; (6) retaliatory denial of transfers; and (7) retaliatory denial of access to his truck.

14

For the reasons below, the undersigned concludes that Defendant is entitled to summary judgment on the discriminatory and retaliatory discharge claims and that Plaintiff cannot raise the following Title VII claims: (1) discriminatory constructive discharge; (2) discriminatory and retaliatory transfer; (3) retaliatory and discriminatory denial of access to Plaintiff's truck; and (4) discriminatory and retaliatory denial of transfers.

### 1.    *Discriminatory and Retaliatory Discharge Claims*

Defendant argues that Plaintiff abandoned his discriminatory and retaliatory discharge claims because he did not respond to Defendant's arguments on summary judgment. [Doc. 44 at 2-3]. The undersigned agrees that Plaintiff's failure to respond to Defendant's arguments concerning Plaintiff's discriminatory and retaliatory discharge claims means that he has abandoned these claims. *See Fitzhugh v. Topetzes*, No. 1:04-cv-3258-RWS, 2006 WL 2557921, *2 (N.D. Ga. Sept. 1, 2006) (concluding that because plaintiff only addressed certain claims in response to summary judgment arguments, she was "deemed to have abandoned" these claims); *see also Thomas v. Bed Bath & Beyond, Inc.*, 508 F. Supp. 2d 1264, 1285 (N.D. Ga. 2007) (Thrash, J., adopting R&R by Hagy, M.J.); *Bute v. Schuller Int'l, Inc.*, 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) (Hunt, J.); *Welch v. Delta Air Lines, Inc.*, 978 F. Supp. 1133, 1137 (N.D. Ga.

15

1997) (Hull, J.).  Since Plaintiff has not responded to Defendant's arguments relating to his discriminatory and retaliatory discharge claims, Plaintiff has abandoned these claims.  Accordingly, Defendant's motion for summary judgment is due to be granted on Plaintiff's discriminatory and retaliatory discharge claims.

Even if the Plaintiff did not abandon the discriminatory discharge claim, Defendant is entitled to summary judgment on this claim as discussed in part IV.C.2.[7] Also, even if Plaintiff did not abandon his retaliatory discharge claim, summary judgment is appropriate as discussed in part IV.B.2.

2.    *Retaliatory Failure to Return to Work at the Commerce Terminal*

Defendant argues that Plaintiff abandoned any claim relating to  Defendant's failure to return him to  the Commerce facility.  [Doc. 44 at 2-3].  The undersigned agrees.  In Defendant's initial brief on summary judgment, Defendant argued that Plaintiff could not demonstrate that its failure to return Plaintiff to the Commerce terminal was retaliatory.  [Doc. 37 at 22-23].  Plaintiff's response brief fails to

_____

[7]    Defendant did not raise any arguments as to the merits of Plaintiff's retaliatory discharge claim.  [*See* Doc. 37 at 22-24].  Instead, Defendant only argued that Plaintiff did not exhaust the retaliatory discharge claim by raising it in his EEOC charge.  [*See id.* at 21-22].  As a result, the undersigned does not address the merits of the retaliatory discharge claim.

16

challenge these arguments. [*See* Doc. 41 at 15-21]. As a result, Plaintiff has abandoned this claim to the extent that he intended to raise it. *See Fitzhugh*, 2006 WL 2557921 at \*2.

Accordingly, Defendant's motion for summary judgment is due to be granted on Plaintiff's claim that Defendant retaliated by failing to return Plaintiff to work at the Commerce terminal. Even if Plaintiff did not abandon this claim, summary judgment is appropriate as discussed in part IV.D.2.

> 3. *Transfer, Denial of Transfers, Truck Access, and Constructive Discharge*

The undersigned next finds that it was improper for Plaintiff to raise in his response brief the Title VII claims involving constructive discharge, discriminatory and retaliatory transfers and denial of transfers, and discriminatory and retaliatory denial of access to Plaintiff's truck. Claims raised for the first time in a response to summary judgment are not considered. *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) (requiring plaintiff to amend the complaint before raising a claim at summary judgment); *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."); *Klauber v. City of Sarasota*, 235 F.

AO 72A
(Rev.8/82)

Supp. 2d 1263, 1268-69 (M.D. Fla. 2002) (granting summary judgment on a claim that was not raised in the complaint and instead was raised for the first time in a response to summary judgment).

First, Plaintiff cannot raise the following discrimination claims: constructive discharge, discriminatory transfer, discriminatory denial of transfers, and discriminatory denial of access to the truck. As for Plaintiff's attempt to raise a constructive discharge claim, he cannot. Nowhere in Count 1 of Plaintiff's complaint - - the race discrimination count - - does Plaintiff mention that he suffered a constructive discharge. [*See* Doc. 1 ¶ ¶ 31-39]. Instead, the focus of Count 1 relates to Plaintiff's termination, not a constructive discharge. [*See id.* ¶¶ 35-36]. Also, the complaint is devoid of any reference to constructive discharge. [*See generally id.*].

As for Plaintiff's attempt to raise discriminatory transfer and denial of access claims, the undersigned also concludes that these claims were not raised in Count 1. The undersigned recognizes that Plaintiff incorporated all prior factual allegations in Count 1. [Doc. 1 ¶ 31]. These factual allegations included: (1) Mike Smiley instructed Plaintiff to only transfer to the Walbridge, Ohio, location [*id.* ¶¶ 20-22]; (2) Plaintiff was transferred to Walbridge while white drivers were transferred to Meridian, Mississippi, where the work and pay were sustained [*id.* ¶ 24]; and (3) Plaintiff was

18

denied access to his truck on the Commerce terminal property [*id.* ¶ 30]. Count 1 of Plaintiff's complaint does not specifically mention, however, Plaintiff's transfer or discriminatory actions by Smiley. Instead, Plaintiff only complains about his termination and discrimination by Cook and Cunningham, neither of whom were alleged to have been involved in the Ohio transfer. [Doc. 1 ¶¶ 35-37]. Also, Count 1 lacks any reference to being denied access to the truck. Given the lack of any reference to the transfer or the denial of access to the truck other than by incorporation of all prior paragraphs, the undersigned concludes that Plaintiff has not raised discriminatory transfer or denial of access claims in his complaint. Instead, he has raised these claims for the first time in the response brief.

Plaintiff has the same problem to the extent that he seeks to raise discriminatory denial of transfer claims. There is no reference to denial of transfers in Count 1. [*See* Doc. 1 ¶¶ 31-39]. Under the factual allegations of the complaint, Plaintiff states that he was not allowed to check all transfer locations [*id.* ¶ 21], but the mere incorporation of this statement into Count 1 does not raise a discriminatory denial of transfers claim. These claims were therefore not properly raised.

Second, the undersigned concludes that Plaintiff cannot raise retaliation claims based on the transfer to Walbridge, denial of transfers, or Allied's denial of access to

19

Plaintiff's truck. The undersigned again recognizes that Plaintiff incorporated all prior paragraphs in the retaliation count of the complaint, but the substance of the retaliation count only mentions "disciplinary actions" and termination. [Doc. 1 ¶ 41]. There is no reference to a transfer, denial of transfers, or denial of access to the truck. Also, these actions are not described as "disciplinary actions" in the complaint nor do they appear to be disciplinary by themselves. Further, Plaintiff testified in his deposition that the only retaliation that he suffered occurred as a result of the 2003 EEOC charge. (Roberson Dep. at 222-29). As a result, the undersigned concludes that Plaintiff did not raise retaliatory transfer, retaliatory denial of transfer, and retaliatory denial of truck access claims in his complaint. Instead, he impermissibly raised these claims for the first time in his response brief.

Accordingly, Plaintiff's constructive discharge, transfer, denial of transfer, and truck access claims are **DISMISSED** as improvidently raised for the first time in Plaintiff's response brief. Even if they were not improperly raised, they are subject to dismissal as stated below.

B.      *Exhaustion*

"In order to litigate a claim for discrimination under Title VII . . . a plaintiff must first exhaust his administrative remedies . . . ." *Rizo v. Ala. Dep't of Human Res.*,

20

228 Fed. Appx. 832, 835 (11th Cir. 2007). There are two exhaustion requirements relevant to this case. First, a plaintiff must file a timely EEOC charge of discrimination. *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). "For a charge to be timely in a non-deferral state such as Georgia, it must be filed within 180 days of the last discriminatory act." *Id.*

Second, a plaintiff must file a charge of discrimination with the EEOC before filing a Title VII action in court. *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004). This rule is in place so "that the [EEOC] [may] have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Id.* (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983)).

A plaintiff may however bring Title VII claims that "amplify, clarify, or more clearly focus" the allegations in the EEOC complaint. *Id.* (quoting *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989)). In other words, "a 'plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Id.* at 1280 (quoting *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000)); *see also Phillips v. Smalley Maint. Servs., Inc.*, 711 F.2d 1524, 1530 (11th Cir. 1983). As a result, a plaintiff may not allege

21

new acts of discrimination in a civil action. *Id.* at 1279-80. "Courts are nonetheless 'extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII],'" such that the EEOC charge is not to be "strictly interpreted." *Id.* at 1280 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460-61, 465 (5th Cir. 1970)). Accordingly, "the proper inquiry" is whether the "complaint was like or related to, or grew out of, the allegations contained in her EEOC charge." *Id.* Thus, the EEOC charge serves to frame the judicial action by limiting the judicial claims to those that are either raised in the EEOC charge or capable of growing out of the EEOC charge.

Defendant argues that Plaintiff did not exhaust certain discrimination and retaliation claims. The Court addresses these arguments below.

### 1.     *Race Discrimination Claims*

Defendant argues that to the extent that Plaintiff raised claims concerning work assignments in California and Mississippi, he cannot raise these claims because he did not exhaust them by raising them in his EEOC charge. [Doc. 37 at 25 n.11]. Plaintiff does not respond to this argument, but instead appears to argue that Defendant should have inquired into Plaintiff working from the California terminal. [*See* Doc. 41 at 20].

The undersigned concludes that Plaintiff did not exhaust these claims. Plaintiff's October 2005 EEOC charge only refers to Plaintiff's July 20, 2005, discharge and the

Ohio transfer.  (*See* EEOC Charge at Def't Exh. 28 in Roberson's Dep.).  As a result, this charge does not explicitly mention transfers to Mississippi or California.  Also, given that the focus of the EEOC charge is on the July 20 discharge and transfer to Ohio, the California and Meridian transfer claims are not like or related to the allegations in the EEOC charge, and they do not grow out of the EEOC charge's allegations.  *See  Gregory*, 355 F.3d at 1280.  Plaintiff therefore has not exhausted his transfer claims relating to Mississippi or California.[8]  Accordingly, if Plaintiff's claims of discriminatory denial of transfer to Mississippi and California were properly before the Court, Defendant would be entitled to summary judgment as to these claims based on Plaintiff's failure to exhaust administrative remedies.

### 2.    *Retaliation Claims*

Defendant argues that any retaliation claims arising before May 2005 are time-barred because he cannot raise claims that arose 180 days before the October 5, 2005,

---

[8]    The undersigned additionally notes that the California transfer claim does not appear to have accrued until after the EEOC charge was filed because Plaintiff's deposition testimony appears to indicate that this claim arose in November 2006. (*See* Roberson Dep. at 161-64).  Also, to the extent that Plaintiff complains that he was wrongly recalled from Meridian, Mississippi, this claim also had not accrued until after the EEOC charge because Plaintiff's recall was in November 2006.  (Roberson Dep. at 167).  Since these claims did not exist at the time the October EEOC charge was filed, an EEOC investigation into these claims would not have reasonably arisen since they occurred after the EEOC charge was filed.

EEOC charge. [Doc. 37 at 20]. Defendant also asserts that Plaintiff cannot raise a retaliation claim based on his July 2005 discharge because he did not raise a retaliation claim in his October 2005 EEOC charge. [*Id.* at 21-22].

Plaintiff appears to argue that the claims are timely because they are part of a continuing violation. [Doc. 41 at 13-14]. In support, Plaintiff first cites to the Supreme Court's decision in *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002). [*Id.* at 13]. Plaintiff then notes that a continuing violation exists when incidents are initiated by the same individuals and involve the same types of discrimination. [*Id.* at 14]. He then states:

> Plaintiff contends that the Defendant, discriminated against him based on his race and gender when he was denied promotional opportunities. Furthermore, some of the alleged incidents occurred within the limitations period. Accordingly, because Plaintiff filed his charge of discrimination within 180 days of the last incident included in his race discrimination complaint, the alleged incidents comprising Plaintiff's race discrimination claims are timely.

[*Id.*].

The undersigned first notes that the above quoted argument by itself does not allow Plaintiff to prevail because it raises arguments that are unrelated to this case. Plaintiff mentions gender discrimination, but Plaintiff has not raised a gender discrimination claim. [*See* Doc. 1; *see also* Oct. 2005 EEOC Charge at Def't Exh. 28

24

in Roberson's Dep.].    Also, Plaintiff states that he was denied promotional opportunities, but there is absolutely no evidence in the record that Plaintiff sought promotions.  As a result, Plaintiff's arguments in response to Defendant's exhaustion arguments are irrelevant to this case because they refer to claims and facts that are not present in this case.

Further, Plaintiff did not exhaust administrative remedies with regard to retaliation claims.  First, Plaintiff's EEOC charge does not make any reference to retaliation, but instead suggests that Plaintiff did not bring a retaliation claim.  Plaintiff did not fill in the "RETALIATION" box in his EEOC charge.  Plaintiff also only indicated that he was discriminated against based on his race.  Plaintiff has not argued, and the EEOC charge does mention, that he engaged in any protected activity between June 14, 2005, and October 5, 2005, the time frame encompassed by the EEOC charge. Without evidence of protected activity, it is unlikely that an EEOC investigation would examine whether retaliation existed.  Also, one of Plaintiff's retaliation claims relates to Plaintiff's denial of access to his truck, which is factually distinct from Plaintiff's allegations in the EEOC charge concerning his discrimination and his Ohio transfer. Under these circumstances, the undersigned concludes that the retaliation claims did not grow out of the EEOC charge.  *See Houston v. Army Fleet Servs., LLC,*

25

509 F. Supp. 2d 1033, 1045-46 (M.D. Ala. 2007); *Dowlatpanah v. Wellstar Doublas Hosp.*, No. 1:05-cv-2752, 2007 WL 639875, *5-6 (N.D. Ga. Feb. 26, 2007) (Duffey, J.) (concluding that EEOC charge raising national origin claim did not also include a retaliation claim). *But see Gregory*, 355 F.3d at 1280 (holding that plaintiff raised a retaliation claim despite only raising race and gender discrimination allegations in the EEOC charge).[9]

Second, even if Plaintiff's EEOC charge somehow raised retaliation claims, the undersigned would conclude that those claims arising from events that occurred before April 8, 2005, are time barred. Plaintiff filed his EEOC charge on October 5, 2005. This means that the EEOC charge only encompasses retaliation claims arising from events that occurred within 180 days before the October 5, 2005, EEOC charge, *i.e.*, those events that occurred on or after April 8, 2005. As a result, Plaintiff cannot raise

_____

[9] The undersigned concludes that *Gregory* should not apply. First, Plaintiff has not argued that this case applies. Second, the instant case is distinguishable because: (1) Plaintiff's EEOC charge does not suggest that Plaintiff experienced retaliation in that it only refers to race discrimination; (2) the undersigned is unaware of any protected activity that occurred during the period encompassed by the EEOC charge; and (3) some of Plaintiff's retaliation claims are factually distinct from the allegations in the EEOC charge.

AO 72A
(Rev.8/82)

retaliation claims based on events that preceded April 8, 2005.[10]  Accordingly, if

Plaintiff's retaliation claims that precede the October 2005 EEOC charge were properly

before the Court, Defendant would be entitled to summary judgment as to those claims

because the claims are time-barred and Plaintiff failed to exhaust administrative

remedies as to the claims.[11]  Even if these claims were properly asserted, they are

without merit, as shown in the Court's discussion on the merits of Plaintiff's retaliation

claims in part IV.D.

---

[10]     Plaintiff appears to argue that the claims are not time barred because the continuing violation doctrine applies. "The 'continuing violations' doctrine provides that 'so long as one act falls within the charge-filing period, discriminatory and retaliatory acts that are plausibly or sufficiently related to that act may also be considered for the purposes of liability.' "  *Smithers v. Wynne*, No. 5:05-cv-439, 2007 WL 951748, *4 (M.D. Ga. Mar. 29, 2007) (quoting *Morgan*, 536 U.S. at 114). The problem with Plaintiff's reliance on this doctrine is that he has not explained what past acts are related to the timely acts.  As a result, the undersigned concludes that the continuing violations doctrine does not apply.

[11]     To the extent that Plaintiff raises retaliation claims that arose after the October 2005 EEOC charge, the undersigned concludes that he may raise these claims. *See Houston*, 509 F. Supp. 2d at 1043 ("[W]hen a retaliation claim is based on adverse actions taken against the employee after the initial EEOC charge is filed, it can be said that the retaliation claim grows out of a properly filed employment discrimination charge, and it is not necessary for a plaintiff to file a second charge specifically alleging retaliation.") (citing *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988), and *Gupta v. East Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. Aug. 28, 1981)).

AO 72A
(Rev.8/82)

*C.*     *Race Discrimination*

     *1.*     *Statutory and Legal Frameworks*

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

To establish a claim of discrimination under Title VII, an individual may proffer direct or circumstantial evidence of discrimination. *Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006). When a party relies on circumstantial evidence to prove his case of discrimination, as Plaintiff does in the instant case, courts employ the familiar burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981), and *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993). *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005).

Under the *McDonnell Douglas* framework, a plaintiff first must establish a *prima facie* case of discrimination. *See, e.g.*, *Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006). If a plaintiff establishes a *prima facie* case,

28

he has created an inference of discrimination, and the defendant has the burden of producing a legitimate, non-discriminatory reason for its employment action. *Id.* If the defendant meets this light burden, then the inference of discrimination is rebutted, and the inquiry "proceeds to a new level of specificity in which the plaintiff must show that the proffered reason really is a pretext for unlawful discrimination." *Id.* (quoting *Joe's Stone Crab, Inc.*, 296 F.3d at 1272). To demonstrate pretext, the plaintiff must provide evidence that "reveal[s] 'such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence.' " *Vessels v. Atlanta Ind. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005) (quoting *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004)). Despite this burden-shifting framework, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Wilson v. B/E Aerospace, Inc.*, 376 F. 3d 1079, 1088 (11th Cir. 1999) (quoting *Burdine*, 450 U.S. at 253).

### 2. *Plaintiff's Discharge*

Defendant argues that it is entitled to summary judgment on Plaintiff's discriminatory discharge claim. [Doc. 37 at 13-18]. First, Defendant contends that

Plaintiff cannot establish a *prima facie* case because he can neither show that he was replaced by someone outside of his protected class nor that a similarly situated person was treated more favorably. [*Id.* at 13-16]. Second, Defendant argues that even if Plaintiff could establish a *prima facie* case, he cannot demonstrate that Defendant's legitimate, nondiscriminatory reasons for discharging Plaintiff - - Plaintiff's dishonesty and failure to comply with Allied's policies - - are pretext for discrimination. [*Id.* at 16-18]. Defendant contends that there is no evidence of pretext because: (1) Plaintiff has not produced evidence of discriminatory comments; and (2) Plaintiff's testimony about a buddy-buddy system is not evidence of race discrimination. [*Id.* at 17-18]. Plaintiff does not respond to this argument. [*See* Doc. 41 at 9-15].

### a. Prima Facie Case

A plaintiff establishes a *prima facie* case of discriminatory discharge by showing that he: (1) was a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was replaced by someone outside of his protected class, was treated differently than similarly situated individuals outside of his protected class, or was otherwise discriminated against. *See Cuddeback v. Fla. Bd. of Edu.*, 381 F.3d 1230, 1235 (11th Cir. 2004); *Wilson*, 376 F.3d at 1091-92. Defendant concedes that Plaintiff can establish the first three elements of the *prima*

30

*facie* case, so the undersigned examines whether Plaintiff can establish the fourth element.

The undersigned concludes that Plaintiff cannot show that issues of material fact exist concerning the fourth element. First, Plaintiff cannot show that he was replaced by individuals outside of his protected class because two individuals who were hired after Plaintiff were both African-American. (*See* Cook Decl. ¶ 24).

Second, Plaintiff cannot show that similarly situated individuals outside of his protected class were treated differently. To be similarly situated, the comparator must be similar in all relevant respects, meaning that the comparator must be "nearly identical." *Wilson*, 376 F.3d at 1091. Plaintiff cannot show that there are any similarly situated comparators. Plaintiff is the only driver who has been banned by Toyota from hauling its vehicles. (D ¶ 74). Also, the only other evidence about which the undersigned is aware concerning damage to a vehicle is that Mr. Simpkin–an African-American male–was not discharged for totaling a Ford vehicle during transport. (*See* Roberson Dep. at 212, 214-15, 217). Since Mr. Simpkin is the same race as Plaintiff, the undersigned concludes that Plaintiff cannot show that any comparators outside of his protected class were treated more favorably.

31

AO 72A
(Rev.8/82)

Finally, the undersigned is unaware of any other evidence of discrimination that would allow Plaintiff to establish a *prima facie* case. Given Plaintiff's failure to respond to Defendant's motion for summary judgment on the discharge issue, Plaintiff has not identified any other evidence of discrimination. Also, the undersigned's independent review of the evidence has found no instances of discrimination. Based on the foregoing discussion, the undersigned concludes that Plaintiff cannot establish a *prima facie* case of race discrimination because he has not created any issues of material fact that he can establish the fourth element of the *prima facie* case.

> b.   Pretext

Even if Plaintiff could establish a *prima facie* case, the undersigned would find that Plaintiff could not establish pretext. A plaintiff meets his burden of showing pretext at summary judgment "by introducing evidence that could form the basis for a finding of facts, which when taken in the light most favorable to the non-moving party, could allow a jury to find by a preponderance of the evidence that the plaintiff has established pretext." *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 921 (11th Cir. 1993). The plaintiff must introduce "significantly probative evidence" showing the defendant's reasons were pretext. *Brooks*, 446 F.3d at 1163; *Young v. General Foods*

*Corp.*, 840 F.2d 825, 829 (11th Cir. 1988). Since Plaintiff has not responded, the undersigned concludes that he has not created any issues of material fact as to pretext.

Accordingly, Defendant's motion for summary judgment on Plaintiff's discriminatory discharge claim is **GRANTED**.

>    3.    *Plaintiff's Transfer to the Walbridge Terminal*

Defendant argues that to the extent that Plaintiff raised a race discrimination claim based on his reassignment to the Walbridge terminal in his complaint, this claim cannot survive summary judgment. [Doc. 37 at 18 n.7]. First, Defendant argues that Plaintiff cannot establish a *prima facie* case because his reassignment was not an adverse employment action and he cannot show that similarly situated individuals were treated more favorably. [*Id.*]. Second, Defendant argues that Plaintiff cannot show pretext. [*Id.*].

Plaintiff first responds that he can establish a *prima facie* case of discrimination based on the transfer to the Walbridge facility. Plaintiff appears to argue that this transfer was an adverse employment decision because he was only allowed to transfer to this location. He also argues that similarly situated white employees were permitted to be transferred to Meridian, Mississippi. [Doc. 41 at 9-10]. Plaintiff then argues that any reason proffered by Defendant is pretextual because: (1) he can establish a *prima*

*facie* case; and (2) white employees who were laid off were allowed to transfer to the Meridian terminal. [*Id.* at 15]. Also as part of Plaintiff's pretext argument, Plaintiff states that when the union continued to reinstate him, Allied resorted to tactics that resulted in a constructive discharge. [*Id.*].

Defendant replies that Plaintiff cannot establish a *prima facie* case or pretext. First, Defendant argues that the transfer was not an adverse employment action because Plaintiff was allowed to earn money at the Walbridge terminal while he was waiting for the ban to be lifted at the Commerce terminal. [Doc. 44 at 13]. Second, Defendant contends that Plaintiff cannot show that similarly situated individuals were more favorably treated in that there were no other drivers who were banned from transporting Toyotas. [*Id.* at 14]. Third, Defendant asserts that its reason–the need for a driver at Walbridge–was not pretext. [*Id.*].

### a. Prima Facie Case

A plaintiff demonstrates a *prima facie* case of discriminatory transfer by showing that: (1) he was a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was treated differently than similarly situated employees outside of his protected class regarding transfers and assignments. *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1344 (11th Cir. 2000);

34

*Baldwin v. Birmingham Bd. of Edu.*, 648 F.2d 950, 955 (5th Cir. Mar. 19, 1981); *Smith v. Ala. Dep't of Pub. Safety*, 64 F. Supp. 2d 1215, 1221 (M.D. Ala. 1999). Defendant only challenges the adverse employment action and similarly situated elements of the *prima facie* case, so the undersigned turns to these two elements.

### i.    Adverse Employment Action

The Eleventh Circuit has explained that courts use the phrase "adverse employment action" as a shorthand for Title VII's requirement that a plaintiff must show that there was a change in the "compensation, terms, conditions, or privileges" of employment. *Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1215 (11th Cir. 2008). The Eleventh Circuit recently reiterated that

> to prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a serious and material change in the terms, conditions, or privileges of employment. Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances.

*Id.* (quoting *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232 (11th Cir. 2001)).

The undersigned concludes that Plaintiff's transfer was not an adverse employment action. First, that Plaintiff was only allowed to choose the Walbridge terminal as a transfer destination is not relevant. The evidence shows that Allied made

35

the final decision as to where to transfer drivers. Thus, that Allied required Plaintiff to only request a transfer to Walbridge is immaterial because Allied still could have selected this terminal as Plaintiff's transfer location even if he had selected multiple locations. (*See* Roberson Dep. at 135). Second, the undersigned agrees with Defendant that the transfer actually improved the terms and conditions of Plaintiff's employment. Prior to the transfer, Plaintiff was assigned to the Commerce location where he could not haul any vehicles due to Toyota's ban. (*See* D ¶¶ 42-44). Once Plaintiff was transferred to Walbridge, he was given assignments to haul vehicles. The undersigned recognizes that Plaintiff did not earn as much as had earned while he was hauling vehicles at the Commerce terminal. (*See* Roberson Dep. at 126-27). However, at the time of the transfer, Plaintiff was not transporting any vehicles from the Commerce terminal because of the Toyota ban. As a result, the undersigned concludes that Plaintiff has not established a serious and material change in his working conditions since he was able to work after the transfer.

### ii. Similarly Situated

The undersigned also concludes that Plaintiff has not established that similarly situated individuals outside of his protected class were more favorably treated. As stated above, a plaintiff establishes that comparators are similarly situated when they

36

are "nearly identical." *Wilson*, 376 F.3d at 1091. Plaintiff does not actually identify any individuals by name, but instead he points to two pages in his deposition–135 and 275–neither of which is helpful in establishing similarly situated comparators. First, page 135 does not make any reference to other employees who were transferred. Instead, it only states that Mike Smiley laid off individuals. (*See* Roberson Dep. at 135). Second, page 275 is unavailing because Plaintiff testified that two individuals who were laid off were rehired that same day to work at the Commerce terminal, not the Meridian terminal as Plaintiff's brief states. (*See id.* at 275). The evidence clearly demonstrates that Plaintiff could not work at the Commerce facility because he was banned from hauling Toyotas. As a result, these individuals cannot be comparators because they are not "nearly identical" in that they were capable of working at the Commerce terminal while Plaintiff was not. Plaintiff cannot establish the similarly situated prong of the *prima facie* case.

Accordingly, Defendant's motion for summary judgment is **GRANTED** on Plaintiff's discriminatory transfer claim.

### 4. Plaintiff's Access to His Truck at the Commerce Terminal

Plaintiff appears to argue that he suffered an adverse action when he was not allowed to retrieve his truck from Allied's Commerce terminal because he was banned

37

from the Commerce property on November 11. Plaintiff explains that no other driver was banned from the terminal or prohibited from picking up his truck. [Doc. 41 at 11]. Defendant argues that Plaintiff cannot establish a *prima facie* case because: (1) denial of access was not an adverse employment action in that there was no prejudice to Plaintiff because he was not permitted to deliver Toyotas; and (2) there are no similarly situated individuals outside of his protected class who were treated more favorably in that Plaintiff was the only driver banned from hauling Toyotas. [Doc. 44 at 7-8]. Defendant also asserts that Plaintiff cannot show that the reason for Plaintiff's denial of access - - his ban from working at the Commerce terminal - - is pretext for discrimination. [*Id.* at 8-9].

### a. Prima Facie Case

The undersigned concludes that Plaintiff cannot establish a *prima facie* case of discrimination based on the denial of access to his truck. As explained above, a plaintiff establishes a *prima facie* case of discrimination by showing, *inter alia*, an adverse employment action and some evidence of discrimination such as similarly situated individuals being treated more favorably. *See Wilson*, 376 F.3d at 1091-92. Plaintiff cannot show either an adverse employment action or evidence of discrimination.

38

First, Plaintiff's denial of access to his truck is not an adverse employment action under the circumstances of this case. Plaintiff testified that he was denied access to his truck following Toyota's ban and Plaintiff's discharge. (Roberson Dep. at 140-41). Thus, at the time that Plaintiff was denied access to the truck, he was not capable of performing work for Allied at the Commerce facility. Plaintiff has not proffered any evidence that had he obtained access to the truck, he would have been able to perform other hauling work. Instead, during the time that Plaintiff was denied access to the truck, he was awaiting resolution of his grievance. (*See* Roberson Dep. at 140-41). Plaintiff cannot show under these circumstances that there was a material and serious change in the terms, conditions, and privileges of his employment given his inability to haul any vehicles for Allied at this time. *Cf. Green v. Harvey*, No. Civ. A. 03-1839, 2005 WL 1308537, *5 (D. Md. May 30, 2005) (finding no adverse action where plaintiff was banned from driving a motor vehicle because plaintiff was unable to operate the vehicle due to an injury).[12]

---

[12] Plaintiff's brief inaccurately implies that Plaintiff was denied access to his truck on November 11. The pages cited by Plaintiff do not support this assertion. Instead, Plaintiff testified that he was able to pick up his truck one month after the June 2005 ban by Toyota. (*Id.* at 141).

AO 72A
(Rev.8/82)

Second, even if denial of access to the truck was an adverse employment action, Plaintiff has not demonstrated that this denial of access was discriminatory. For instance, Plaintiff has not (and cannot) identify that a similarly situated individual outside of his protected class was treated more favorably. As explained above, Plaintiff was the only individual who had ever been banned by Toyota from hauling its vehicles. Since Plaintiff's inability to retrieve his truck was related to this ban (*see* Roberson Dep. at 140), he cannot show that others were given more favorable treatment due to the unprecedented nature of his ban. The undersigned is also unaware of any other evidence that would render the denial of access discriminatory.

As a result, the undersigned concludes that Plaintiff has not created any issues of material fact to demonstrate that he can establish a *prima facie* case of discrimination based on denial of access to the truck. Even if Plaintiff had satisfied the *prima facie* case on this allegation, he cannot show pretext.

### b.     Pretext

The undersigned concludes that even if Plaintiff could establish a *prima facie* case of discrimination for the denial of truck access, Plaintiff cannot establish pretext. Plaintiff's brief fails to raise any arguments as to why the reason for denying him access to his truck was pretext for discrimination. [*See* Doc. 41 at 12-15]. Plaintiff's

40

first pretext "argument" relates to the applicability of the continuing violation theory to his case. [*See id.* at 12-14]. This argument does not raise doubts about the reason Plaintiff was denied access to his truck but instead is an argument about timeliness of certain claims. A valid pretext argument casts doubt on the employer's proffered reasons. *See Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008) ("The inquiry into pretext requires the court to determine, in view of all the evidence, 'whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct.' ") (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)). Plaintiff's continuing violation doctrine argument does not support a claim of pretext.

Plaintiff's next pretext argument states: "the relevant inquiry . . . is whether the *disparities in qualification* are of such weight and significance that no reasonable person . . . could have chosen the candidate." [*Id.* at 15]. This argument does not relate to any issue in the case. Qualifications play no role in the defendant's denial of access to his truck.

Plaintiff's final pretext argument relates to individuals being laid off and then reinstated [*id.*], which is not relevant to the denial of access claim. As a result, Plaintiff

41

has not provided any significantly probative evidence to show that Defendant's reason for denying Plaintiff access to his truck was pretextual. *See Brooks*, 446 F.3d at 1163.

Accordingly, summary judgment is **GRANTED** in Defendant's favor on Plaintiff's discriminatory denial of access to his truck claim.

> 5.    *Constructive Discharge*

Plaintiff also argues that he was constructively discharged when he was only allowed to transfer to the Walbridge, Ohio terminal and when he was denied access to his truck. [Doc. 41 at 9, 11].

"A constructive discharge occurs when a discriminatory employer imposes working conditions that are "so intolerable that a reasonable person in [the employee's] position would have been compelled to resign." *Fitz v. Pugmire Lincoln-Mercury, Inc.*, 348 F.3d 974, 977 (11th Cir. 2003) (quoting *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997)).

The undersigned concludes that Plaintiff cannot make a constructive discharge claim. First, Plaintiff has not cited to any case law regarding constructive discharge. [*See* Doc. 41 at 9, 11, 15]. As a result, Plaintiff has not attempted to explain how Plaintiff's working conditions met the constructive discharge standard of intolerable conditions. The undersigned will not undertake this task for Plaintiff. *See*

42

*Lyes v. City of Riviera Beach, Fla.*, 126 F.3d 1380, 1388 (11th Cir. 1997) ("[T]he onus is upon the parties to formulate arguments"); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it.").

Second, the undersigned concludes that Plaintiff's denial of access to his truck and his transfer to Walbridge do not establish a constructive discharge claim. First, Plaintiff's denial of access to his truck occurred at a time when he was discharged from Allied. (*See* Roberson Dep. at 140-41). As such, it is unclear how he can assert that the denial of access was a constructive discharge given that he was already discharged. As for the transfer to Walbridge, this action did not render Plaintiff's working conditions intolerable. Although Plaintiff was clearly unhappy working from the Walbridge terminal, this transfer provided him with an opportunity to work, which Plaintiff could not do while based out of the Commerce terminal due to Toyota's ban. As a result, Plaintiff has not shown that his working conditions were so intolerable that a reasonable person would resign.

Accordingly, summary judgment is **GRANTED** in Defendant's favor on Plaintiff's constructive discharge claim.

AO 72A
(Rev.8/82)

*D.     Retaliation*

*1.     Statutory and Legal Frameworks*

Under the anti-retaliation clause of Title VII, it is an unlawful employment practice for an employer to, *inter alia*, discriminate against an employee "[(1)] because he has opposed any practice made an unlawful employment practice by this subchapter, or [(2)] because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).   These two prohibitions on retaliation are generally known as the opposition clause and the participation clause, respectively.  *E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000).   In determining whether an employer has retaliated against an employee for engaging in protected activity, the Court uses the same *McDonnell Douglas* analytical framework as used in race discrimination cases that the undersigned has previously summarized.  *McDaniel v. Fulton County Sch. Dist.*, 233 F. Supp. 2d 1364, 1384 (N.D. Ga. 2002).

*2.     Failure to Return Plaintiff to Work at the Commerce Terminal*

Defendant argues that to the extent that Plaintiff's complaint raises a retaliation claim based on Defendant's failure to return Plaintiff to work, it is entitled to summary judgment on such a claim.  [Doc. 37 at 22-24].  First, Defendant argues that Plaintiff

44

cannot establish the causation element of the *prima facie* case because Toyota banned Plaintiff from transporting its products in June 2005, which precluded Plaintiff from working at the Commerce terminal.  [*Id.* at 23].  Second, Defendant argues that Plaintiff cannot establish that its legitimate, nondiscriminatory reason for doing so–Toyota's ban–is pretext for retaliation given that Defendant undertook its best efforts to cause Toyota to lift its ban.  [*Id.*].

Plaintiff does not respond to Defendant's arguments.  [*See* Doc. 41 at 15-20].  Instead, Plaintiff appears to argue that he can show pretext because Defendant failed to give him other transfer opportunities or inquire about these opportunities, including a transfer to the California terminal.  [*Id.* at 20].

a.   *Prima Facie Case*

"To establish a prima facie claim for retaliation, a plaintiff must show that: (1) he engaged in a statutorily protected activity; (2) he suffered an action from his employer that a reasonable employee would have found to be materially adverse; and (3) there is a causal link between the two events."  *Bothwell v. RMC Ewell, Inc.*, No. 07-14120, 2008 WL 2123340, *3 (11th Cir. May 21, 2008) (citing *Burlington Northern and Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006)).

AO 72A
(Rev.8/82)

The undersigned concludes that Plaintiff cannot establish a *prima facie* case of retaliation because Plaintiff cannot establish a causal connection between his EEOC charge and his failure to return to work at the Commerce facility. The undisputed evidence demonstrates that: (1) Toyota refused to lift the ban barring Plaintiff from hauling its vehicles (D ¶¶ 28, 30, 39, 42-44, 46) and (2) the Commerce terminal only hauled Toyota vehicles (D ¶ 4). As a result, Plaintiff could not return to work at the Commerce terminal so long as the Toyota ban was in place. There is therefore no causal connection between Plaintiff's October 2005 EEOC charge and Allied's refusal to return Plaintiff to work at Commerce.

### b.    Pretext

The undersigned concludes that even if Plaintiff could establish a *prima facie* case of retaliation, Plaintiff cannot show that Defendant's legitimate reason for not returning him to work at the Commerce terminal–Toyota's ban–is pretext for retaliation. As previously explained, the Commerce facility's sole business was hauling Toyota vehicles. (D ¶ 4). Since Toyota refused to lift its ban, there was no work for Plaintiff to perform at the Commerce terminal. As for Plaintiff's argument about the

46

transfer to the California terminal, this evidence does not establish pretext.[13]  As a

result, Plaintiff cannot establish pretext.

Accordingly, Defendant's motion for summary judgment on Plaintiff's claim

regarding Allied's failure to return him to work at the Allied facility is **GRANTED**.

     3.    *Transfer and Access to Truck*

Plaintiff contends that he can establish a *prima facie* case of retaliation based on

the Ohio transfer and the denial of access to the truck.  First, Plaintiff contends that he

has established the protected activity element because he filed EEOC complaints

against Defendant in May and October 2005.  [Doc. 41 at 17].  Second, Plaintiff claims

that he suffered an "adverse employment action" because: (1) he experienced a

disadvantageous transfer and (2) he was not allowed to retrieve his vehicle from Allied

property.  [*Id.* at 18].  Third, Plaintiff argues that he can establish a causal connection

because these events were the first opportunity to retaliate against Plaintiff.  [*Id.* at 19-

20].  Plaintiff also argues that any reasons by Defendant are pretext.  As for transfers,

Plaintiff claims that Allied could have given Plaintiff other opportunities to transfer, but

------

[13]    To the extent that Plaintiff intends to raise an independent claim based on
failure to transfer to the California terminal, the undersigned has already concluded that
he cannot raise such a claim because it was not raised in his complaint.  *See* Part
IV.A.3.

AO 72A
(Rev.8/82)

failed to do so. As for the denial of access to the truck, Plaintiff states that Cook was sending a message that anyone who sued would be punished. [Doc. 41 at 20-21].

Defendant argues that Plaintiff cannot establish a *prima facie* case of retaliation for either the denial of access or transfer claims. Defendant asserts that both claims occurred before Plaintiff's protected activity–the October 2005 EEOC charge. [Doc. 44 at 10, 14-15]. Defendant also contends that Plaintiff cannot establish pretext for the denial of access or transfer claims because Plaintiff's pretext arguments are irrelevant to these claims. [*Id.* at 11, 15].

The undersigned concludes that Plaintiff cannot establish a *prima facie* case of retaliation because Plaintiff cannot establish the causation element of the *prima facie* case. Courts "construe the causal link element broadly so that 'a plaintiff merely has to prove that the protected activity and the . . . [adverse] action are not completely unrelated.'" *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (quoting *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998)). However, "[i]t is the nature of retaliation claims that they arise *after* the filing of the EEOC charge" or engaging in protected activity. *See Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988) (emphasis added) (quoting *Gupta v. East Tex. State Univ.*, 654 F.2d 411, 411(5th Cir. Unit A Aug. 1981)). Here, the evidence shows that both the transfer, which

48

occurred in September 2005, and the denial of access to Plaintiff's truck, which occurred in July 2005, preceded Plaintiff's October 2005 EEOC charge. As a result, Plaintiff clearly cannot demonstrate that the protected activity motivated the employer to take these actions. *See Sullivan v. City of Satsuma*, Civ. A. 04-0473, 2005 WL 2895983, *2 (S.D. Ala. Oct. 28, 2005) (noting that plaintiff could not establish a retaliation claim where adverse actions occurred before protected activity); *Weaver v. Fla. Power & Light*, No. 95-cv-8519, 1996 WL 479117, *15 (S.D. Fla. July 16, 1996) ("As a matter of law, there can be no causal connection when the alleged retaliatory conduct occurs prior to the protected activity.").[14]

---

[14]    Plaintiff asserts that he engaged in protected activity in May 2005 by filing an EEOC charge. [*See* Doc. 41 at 17]. There is absolutely no evidence that Plaintiff filed an EEOC charge in May 2005. Plaintiff testified in his deposition that he filed three EEOC charges: (1) a 2003 EEOC charge; (2) an October 2005 EEOC charge; and (3) a May 2006 EEOC charge. (*See* Roberson Dep. at 189-90). Thus, Plaintiff's deposition does not establish that he filed an EEOC charge in May 2005. Also, Plaintiff's brief cites to Exhibits 1 and 2 of Plaintiff's deposition to demonstrate that he filed an EEOC charge in May 2005. These exhibits are unhelpful. Defendant's Exhibits 1 and 2 show a driver's daily log and a photograph of a car respectively. (Roberson Dep. at Def't Exhs. 1, 2). Plaintiff's Exhibits 1 and 2 from his deposition show Plaintiff's transfer requests and an October 10, 2005, letter from Plaintiff. Thus, the evidence cited by Plaintiff does not demonstrate that Plaintiff filed a May 2005 EEOC charge.

Accordingly, summary judgment is **GRANTED** in Defendant's favor on Plaintiff's retaliatory transfer and denial of truck access claims.[15]

## V.   CONCLUSION

For the reasons discussed above, the Defendant's motion for summary judgment, [Doc. 37], is **GRANTED** as to all claims.  The Clerk is **DIRECTED** to enter judgment for Defendant.

**SO ORDERED**, this   24th   day of June, 2009.


_____
**RICHARD W. STORY**
United States District Judge

_____

[15]     To the extent that Plaintiff can establish a *prima facie* case, the undersigned concludes that Plaintiff cannot establish pretext.  For both the transfer to Walbridge and denial of access claims, Plaintiff has not raised any arguments to show that Defendant's reasons for taking these actions were pretext for retaliation.  Instead, Plaintiff argues that Defendant should have transferred Plaintiff to other locations.  [*See* Doc. 41 at 20-21].  This argument does not show that Defendant's reason for transferring Plaintiff to Walbridge was retaliatory or that the denial of access to Plaintiff's truck was retaliatory.  Plaintiff therefore has not met his burden of providing significantly probative evidence to establish pretext for either his transfer or denial of access claims.

AO 72A
(Rev.8/82)